GLADNEY, Judge.
This action is by Ed Jacobs and his wife, Annie Lee Jacobs, against their landlord, John Fulco, for recovery of damages allegedly arising from personal injuries received by Annie Lee Jacobs when- a post or column supporting the roof over the. front porch of the leased premises fell against her back. ■.
The occurrence giving rise to the suit happened at municipal number 1204 Shreve Alley, Shreveport, Louisiana, a two-room house which plaintiffs had been renting from the defendant for about five years.
The petition alleges Annie Lee Jacobs at about 7:30 on the morning of July 25, 1951, had moved a steel two-seated glider to the right side of the porch and as she was attempting to seat herself in the glider one of the columns of the porch became detached from its position without being touched and fell and struck her across the lower part of her back with ■ such force that it knocked her on her knees to the floor, causing her to scream in agony. It is claimed the blow inflicted small bruises- and abrasions upon her body, produced a strain of tlie right knee and back with tearing of the ligaments of the lower back,, and caused a severe shock to her nervous: system, from which injuries she has suffered' continuously from intense pain in the' lower back, hips and legs with confinement to bed so that she has been unable to perform her household duties. Ed Jacobs appears to claim certain charges and expenses allegedly incurred,by him as head of the community as the result of the personal injuries to his wife.
By answer to the complaint, defendant generally denied the claims therein made and specially averred the premises were free from any vices and defects, that the falling of the post was due to its forcible detachment by-Annie Lee Jacobs, and further, that Annie Lee Jacobs was not injured thereby. In the alternative, he has presented a plea of contributory negligence.
Following trial of the case the district court rendered a judgment which rejected the'demands of plaintiffs without assigning written reasons therefor.
Plaintiff’s action is based upon LSA-C.C. art. 2695, which, with some deletion, reads:
“The lessor guarantees the lessee against all the vices and defects of the 'thing, * * * even in case it should appear he 'knew nothing of the existence of such vices and defects, at the time the lease was made, and evert if they have arisen since, * * * and if any loss should result to the lessee from the vices and defects, the *669 lessor shall be bound to indemnify him for the same.”
Other Codal articles dealing with the same subject are LSA-C.C. arts. 670, 2315, 2322 and 2693.
Throughout the trial of the case defendant, through not denying the post'did fall, took the position the accident alleged upon did not occur either because of the post not striking Annie Lee Jacobs or if it did, that no injuries were inflicted. Considerable medical testimony was adduced to show a complete absence of objective symptoms of trauma.
The 'house in which plaintiffs lived was a two-room house having a front porch approximately six feet in depth, extending across the front of the house a distance of twelve or thirteen feet. The roof extends over and beyond the porch and is supported by two large wooden columns about four inches in diameter and eight feet in length. The columns were standing on the outer edges of .the. porch resting on the wooden floor and extending to the roof. The floor of the porch is laid on six by eight inch woodens sills supported by concrete block pillars.
The plaintiffs sought to establish through the evidence of Ed Jacobs that one of the sills supporting the Corners of the porch broke and caused the fall of the post. His testimony was that he returned to his home the night of the accident only to find the entire structure of the porch torn away by his landlord, but he located the sill which had supported the post and found it to be broken and to this factor he attributed the falling of the post. Contradictory of this testimony is that of Frank Whitted and Sam Fertitta. Whitted, the general repair man of defendant removed the porch after the accident upon direction of. his employer and he stated that the sill was sound and not broken. Similar testimony was given by Fertitta, the son-in-law of Fulco, who assisted Whittéd in tearing away the porch.
Plaintiffs offered the testimony of Em'ma Evans to the effect that'although the bottom of the post was nailed to the floor which appeared solid there were no nails in ■the top of the post. This witness, an occupant of the leased premises, said she was present when the post fell upon Annie Lee Jacobs and she examined the post directly afterwards. Her testimony is contradicted by James G. Henderson and Lovie Brown who declared Emma Evans was not present on the porch at that time.
Whitted and Fertitta further testified that they had fully inspected the leased premises the day prior , to the accident and .noted no defects. After receiving notice that the post had fallen, Mrs. Fulco instructed Whitted and Fertitta to .remove the porch. This was done within several hours after the post fell. Whitted and Fer-titta' both gave positive testimony with a photograph as supporting evidence the post was solid at both 'ends, top and bottom, and without vice or defect. Both testified that nails appeared in the top and bottom of the post.
Annie Lee Jacobs testified she had pulled a two-seated steel glider from near the front door close to the post at the right front corner of the house and with the glider facing the street directly in front of the window she was preparing to seat herself in the glider when the post fell. She says at the time she was struck one hand was holding the right arm of the glider and the other hand was resting on'the back of the glider seat with her body facing the window and bent forward as she was about to sit down on the glider. She located the glider as being two and one-half feet from the post and about two feet from the front edge'of the porch. It was while she was in this position that the post fell. She says that when the post fell it knocked her down beside the glider on her knees and that she did not fall on the glider.
Counsel for defendant assert injury could not have been inflicted in the manner stated by Annie Lee Jacobs, for, in- order 'for 'the post to have struck her on the lower'part of the back she would have fallen across the glider since she was holding onto the glider with both hands at the moment •the'post fell and upon flexing her knees she *670 could not have avoided striking the glider. We readily concede there is much force to the argument of counsel if the testimony of Annie Lee is to be unqualifiedly accepted. Counsel further argues that if the post had struck her at all she would have been struck on the left side due to the angle at which the post had to fall. This position likewise seems to be valid.
In support of the testimony of Annie Lee Jacobs, Emma Evans testified to being an eye witness of the occurrence. She described Annie Lee as being in a stooping position just about to sit down, when the post hit her. She says that Annie Lee Jacobs was then facing the street which statement is conflict with the testimony of Annie Lee Jacobs who said her body was facing the window of the house with her two hands resting on the glider and with the post to her left when it fell.
James G. Henderson and Lovie Brown, both of whom were next door neighbors, testified that within a few minutes after the accident Annie Lee told them she was not hurt. Henderson, who said he was on his gallery facing Annie Lee Jacobs at the time asserted she was dragging a folded iron bed standing on rollers when the lower part of the bed slipped and hit the bottom part of the post, thus causing it to fall, striking and glancing off of Annie Lee’s shoulder as it did so. Henderson further stated Emma Evans was not present on the porch. Lovie Brown related he heard a noise and immediately asked Annie Lee Jacobs if she was hurt and she said “No.” He testified that he at that time observed the iron bed on the porch. Both Annie Lee Jacobs and Emma Evans denied that any such bed was on the porch before or during the accident.
Medical testimony relating to plaintiff’s injuries is as unsatisfactory as that relating to the happening of the accident. Dr. D. C. McCuller examined Annie Lee Jacobs at her home within three or four hours after the post fell and he was unable to find any bruises, contusions or breaks in the skin or other objective signs of injury. Mrs. Sam Fulco was then present, observed the back of the patient at the time Dr. McCuller made his examination, and she likewise stated there were no visible signs of injury. Dr. Charles S. Holt, Jr., examined plaintiff on behalf of defendant three days after the accident and although he found no indications of objective injury he gave the patient several diathermic treatments for her back. Both Drs. McCuller and Holt concluded that the symptoms were subjective only and of such a minor nature that they did not suggest X-rays. On August 16, 1951, plaintiff was examined by Dr. S. W. Boyce who concluded solely on subjective symptoms that plaintiff was suffering from a sacro-iliac strain.
Counsel have informed us that the judge a quo in rendering his decision assigned as his oral reasons therefor, that Annie Lee Jacobs did not suffer an injury by reason of the falling of the post. A thorough review of the evidence suggests no manifest error in such a conclusion.
For the reasons herein assigned, the judgment from which appealed is affirmed at plaintiff’s cost.